**FREEPORT MINERALS COMPANY (Freeport-McMoran, Inc.), Appellant,**

v.

**The UNITED STATES, Appellee,**

and

**Chevron Canada Resources Ltd. and Chevron Chemical Corp., Intervenors.**

**Appeal No. 84–1068.**

United States Court of Appeals, Federal Circuit.

April 3, 1985.

Harvey M. Applebaum, Covington & Burling, Washington, D.C., argued for appellant. With him on the brief were David R. Grace and Richard E. Neff, and Albert F. Rothwell, Freeport Minerals Company of New York City, of counsel.

Sheila N. Ziff, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With her on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Velta A. Melnbrencis, Asst. Director, New York City.

John M. Peterson, Donohue & Donohue, New York City, argued for intervenors; Joseph F. Donohue, New York City, was on brief.

Before SMITH, NIES and BISSELL, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

In this antidumping case, the United States Court of International Trade dismissed as untimely the action of appellant Freeport Minerals Company (Freeport), seeking judicial review of the revocation of an antidumping finding on elemental sulphur from Canada manufactured and exported by Chevron Canada Resources Ltd. and imported by Chevron Chemical Corp., intervenors (Chevron). We reverse.

### Issues

The first issue before this court is whether the lower court erred, as a matter of law, in holding that Freeport's action challenging the determination by the International Trade Administration (ITA) of the Department of Commerce to revoke part of an antidumping finding as to Chevron was untimely.[1] The second issue is whether the trial court erred in holding that Freeport's action constituted a collateral attack on that court's order of June 10, 1983,[2] and hence was precluded. Finally, we examine whether Freeport's action was precluded under a theory of laches.

### Background

On July 23, 1982, there appeared in the *Federal Register* an ITA notice entitled: "Elemental Sulphur from Canada; Final Results of Administrative Review of Antidumping Finding."[3] In this notice ITA announced the final results of its adminis-

---

1. *Freeport Minerals Co. v. United States,* 583 F.Supp. 586 (Ct. Int'l Trade 1984).

2. *Chevron Standard Ltd. v. United States,* No. 83–55, slip op. (Ct. Int'l Trade June 10, 1983).

3. 47 Fed.Reg. 31,911 (1982). *See* 19 U.S.C. §§ 1673 *et seq.* (1982) for statutory provisions concerning imposition of antidumping duties, which are imposed upon products imported into

the United States after the required proceedings have shown that the imported goods are being, or are likely to be, sold in the United States at less than fair value and an industry in the United States is being materially injured, or threatened with material injury, by reason of such imports. 19 U.S.C. § 1673. All further statutory citations are to title 19 of the U.S.Code, unless otherwise noted.

trative review, pursuant to law,[4] of an antidumping order on elemental sulphur from Canada, which order had been outstanding since 1973. Although ITA's findings with regard to three Canadian companies, one of which was intervenor Chevron, were that these companies had not been selling elemental sulphur at less than fair value in this country for the relevant period, ITA exercised its discretion *not* to issue a determination to revoke the antidumping order with regard to these three companies. Instead, ITA postponed action on these companies' requests for revocation in an attempt to "arm-twist" them into encouraging another Canadian company, of which they were significant shareholders, to provide ITA long-sought data concerning an unrelated issue.

Chevron challenged the ITA's determination to postpone revocation and the lower court held that ITA's postponing action on the revocation request was "based on a ground neither reasonable nor related to the subject matter of plaintiffs' application."[5] Accordingly, the trial court remanded the case, with an order that ITA submit within 30 days a new "determination * * * in accordance with the * * * findings previously made."[6] Freeport did not participate in Chevron's challenge in any way.

On June 1, 1983, ITA transmitted to the clerk of the court below a brief letter entitled "Final Results of Redetermination of Partial Revocation Pursuant to Court Remand, *Chevron Standard, Ltd., et al. v. United States,* [563 F.Supp. 1381 (C.I.T. 1983) ] Court No. 82–8–01175." In this letter ITA expressed its "intent to revoke the antidumping finding on elemental sulphur from Canada with regard to Chevron Standard, Ltd. without regard to Chevron's participation in [the unrelated issue]." ITA attached to the letter a 2-page statement entitled "Remand Determination * * * Pursuant to Remand Order * * * " in which it concluded:

> Accordingly, in light of the fact that, (1) there have been no Chevron sales at less than fair value from the date of withholding, April 1, 1973, through the date of the last period of Departmental examination, February 8, 1979, (2) the appropriate representations have been filed with the Department as required by 19 CFR 353.54, and (3) the fact that the Department is aware of no other circumstance in respect to Chevron which might prompt the Department not to invoke its revocation discretion at this time, it is concluded that a partial revocation of the finding should be issued in respect to Chevron.
>
> Upon receipt of appropriate authorization by the Court of International Trade in this matter, an appropriate Federal Register notice will be prepared and published containing the details of the Court's remand directive and our actions in respect thereto.

Shortly thereafter, on June 10, 1983, the trial court issued an order affirming this remand determination.[7]

Finally, on September 9, 1983, ITA published in the *Federal Register* a notice entitled: "Elemental Sulphur from Canada; Partial Revocation of Antidumping Finding."[8] This notice explained in part that: "On June 10, 1983, the Court affirmed the remand determination of the Department."[9] It is this notice which is the basis for Freeport's challenge in the lower court, which dismissed Freeport's action as untimely and a collateral attack, as discussed further below.

## OPINION

### 1. *Timeliness of Appeal*

Freeport contends that the lower court erred in not holding that the September 9,

---

4. Section 1675(a)(1).

5. *Chevron Standard Ltd. v. United States,* 563 F.Supp. 1381, 1384 (Ct. Int'l Trade 1983).

6. *Id. See* part 2 *infra* more fully quoting the order.

7. *Chevron Standard Ltd.,* No. 83–55.

8. 48 Fed.Reg. 40,760 (1983).

9. *Id.*

1983, ITA notice of partial revocation was a determination made under the authority of section 1675 so as to start the time running under section 1516a(a)(2) for Freeport to commence an action contesting any factual findings or legal conclusions upon which ITA based the determination. Instead that court held that the determination which Freeport should have challenged to attack the underlying finding of no sales at less than fair value was that which ITA had made over a year previously, on July 23, 1982, when it published its "final results" of administrative review. We must first examine and set forth the relevant provisions of this complex statute.

Judicial review in antidumping proceedings is provided for in section 1516a which states in pertinent part:

§ 1516a. Judicial review in countervailing duty and antidumping duty proceedings

(a) * * *

\* \* \* \* \* \*

(2) Review of determinations on record

(A) In general

Within thirty days after the date of publication in the Federal Register of—

(i) notice of any determination described in clause (ii), (iii), (iv), or (v) of subparagraph (B), or

(ii) an antidumping or countervailing duty order based upon any determination described in clause (i) of subparagraph (B),

an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade * * * contesting any factual findings or legal conclusions upon which the determination is based.

(B) Reviewable determinations

The determinations which may be contested under subparagraph (A) are as follows:

\* \* \* \* \* \*

(iii) A determination * * * under section 1675 of this title.

Since neither the July 23, 1982, nor the September 9, 1983, ITA notices are antidumping or countervailing duty orders under section 1516a(a)(2)(A)(ii), we must look to section 1516a(a)(2)(A)(i) which provides for review of factual findings or legal conclusions within 30 days after publication of notice of a described "determination." The pertinent section 1516a(a)(2)(B)(iii) references a determination under section 1675. Thus, we must focus upon section 1675 to decide whether the Government and Chevron are correct that Freeport had to seek review of the 1982 determination in order to challenge any adverse factual findings or legal conclusions set out therein within 30 days of its publication, as held by the lower court.

Section 1675, "Administrative review of determinations," encompasses the following ITA actions:

§ 1675. Administrative review of determinations

(a) Periodic review of amount of duty

(1) In general

At least once during each 12-month period beginning on the anniversary of the date of publication of a countervailing duty order under this subtitle or under section 1303 of this title, an antidumping duty order under this subtitle or a finding under the Antidumping Act, 1921, or a notice of the suspension of an investigation, the administering authority, after publication of notice of such review in the Federal Register, shall—

(A) review and determine the amount of any net subsidy,

(B) review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty, and

(C) review the current status of, and compliance with, any agreement by reason of which an investigation was suspended, and review the amount of any net subsidy or margin of sales at less than fair value involved in the agreement,

and shall publish the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed in the Federal Register.

(2) Determination of antidumping duties

For the purpose of paragraph (1)(B), the administering authority shall determine—

(A) the foreign market value and United States price of each entry of merchandise subject to the antidumping duty order and included within that determination, and

(B) the amount, if any, by which the foreign market value of each such entry exceeds the United States price of the entry.

The administering authority, without revealing confidential information, shall publish notice of the results of the determination of antidumping duties in the Federal Register, and that determination shall be the basis for the assessment of antidumping duties on entries of the merchandise included within the determination and for deposits of estimated duties.

\* \* \* \* \* \*

(c) Revocation of countervailing duty order or antidumping duty order

The administering authority may revoke, in whole or in part, a countervailing duty order or an antidumping duty order, or terminate a suspended investigation, after review under this section. Any such revocation or termination shall apply with respect to unliquidated entries of merchandise entered, or withdrawn from warehouse, for consumption on and after a date determined by the administering authority.

The dispute arises because of the unusual nature of the 1982 notice,[10] in which ITA found no sales at less than fair value by Chevron (and others), but did not make a determination of revocation as to Chevron.[11] As stated in that notice:

> With regard to the other three firms the Department now finds that all sales by Gulf Oil Canada, *Chevron Standard,* and Hudson's Bay Oil and Gas were made at not less than fair value. *However, the Department is postponing action on these companies' applications for revocation.* [Emphasis supplied.]

In the Chevron suit the lower court treated the 1982 notice as the publication under section 1675(a)(1) of a "determination \* \* \* to postpone action" on Chevron's application for revocation.[12]

Freeport contends that it would have made no sense and would have wasted judicial and legal resources for it to have sought review upon publication of the 1982 notice postponing revocation for the purpose of challenging the finding that Chevron had not been selling elemental sulphur at less than fair value, because the end result of review at that time was *favorable* to Freeport. As a domestic producer, Freeport's concern was and remains *continuation* of the antidumping order against Chevron and the Canadian companies. It wasn't until ITA's 1983 notice revoking the order regarding those companies that Freeport believed it was aggrieved.

The Government and intervenor Chevron counter that the 1982 notice, although it postponed revocation, constituted the final administrative review of the antidumping finding for the period under review and subsumed all factual and legal conclusions upon which it was based. In other words, with the exception of the postponement of

---

**10.** 47 Fed.Reg. 31,912 (1982).

**11.** Interestingly, the record shows that when ITA issued notice of partial revocation as regards the same antidumping finding and certain *other* Canadian companies, ITA stated that the action was under §§ 1675(a)(1) and (c). "Notice of Final Results of Administrative Review and Partial Revocation of Antidumpting [*sic*]

Finding," 47 Fed.Reg. 3811, 3813 (1982). Freeport *did* challenge that action in the lower court, which assumed jurisdiction and addressed the case on the merits. *Freeport Minerals Co. v. United States,* 590 F.Supp. 1246 (Ct. Int'l Trade 1984).

**12.** *Chevron Standard Ltd.,* 563 F.Supp. at 1381.

the revocation, the 1982 notice of final administrative review was negative to Freeport, because it evaluated Freeport's contentions and found no sales at less than fair value. Freeport should have challenged these specific findings at that time, the Government and Chevron urge, instead of waiting until a year later when, based upon the very same findings, the ITA partially revoked the order. In other words, in Chevron's and the Government's view, these specific findings became unchallengeable 30 days after publication of the 1982 notice. In this case the lower court used the term "determined" in characterizing ITA's conclusion that there were no sales by Chevron at less than fair value.

The view that all findings or determinations adverse to either party had to be the subject of an action within 30 days of publication in 1982 parses the case too finely. As a general rule, the prevailing party in a proceeding may not appeal the proceeding just because he disagrees with some of the findings or reasoning. If this were not so, appellate courts would be swamped with theoretical disputes.[13] Similarly, since the end result of the 1982 notice was favorable to Freeport, there was no point in its challenging the ITA then. Chevron, for example, might have lost before the lower court and postponement of the revocation might have continued until the next ITA review, to Freeport's benefit.[14]

Further, the effect of the lower court's decision setting aside the determination to postpone action effectively renders the question of whether Freeport should have

sought court review in 1982 moot. Under that court's remand, the ITA made a new determination under section 1675 based on the same findings.[15] We view the publication of the 1983 notice as a publication of that determination as required under section 1675(a).[16]

Finally, in further support of its contention that the 1982 notice subsumes all the factual and legal findings upon which the 1983 notice was based, the Government relies upon *Royal Business Machines, Inc. v. United States*, 669 F.2d 692 (Cust. & Pat.App.1982). That case differs from the one at hand, however, because there the importer could and should have challenged the findings underlying an antidumping order because not only the findings but also the order were adverse to the importer. By contrast and as we have repeated, the July 1982 notice was favorable to Freeport because it postponed the adverse action—revocation of the order.

 In sum, our statutory analysis leads us to hold that the 1983 ITA notice was publication of a determination to revoke under section 1675, and therefore was reviewable under section 1516a(a)(2)(B)(iii). Further, the findings underlying that determination are reviewable as provided in section 1516a(a)(2)(A)(i). Accordingly, the lower court erred in holding that Freeport's action was untimely.

### 2. Collateral Attack

Freeport also urges that the lower court erred in holding that Freeport's action chal-

---

13. Perhaps a more apt litigating analogy would be to the final judgment rule, whereby, with certain statutory and judicial exceptions, a party may not appeal a federal district court decision until it is final. 28 U.S.C. §§ 1291–1292. Viewed in this context, Chevron's challenge to ITA's determination to postpone, based on an unrelated matter, would appear akin to an interlocutory appeal under the collateral order doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We are cautious, however, in applying any such general litigating precepts to this case, which is governed by the precise and peculiar statutory framework herein dissected.

14. The Government concedes that Freeport would not have been able to challenge the adverse sales-at-less-than-fair-value findings of the 1982 notice in an action intervening upon Chevron's appeal, based on *Fuji Elec. Co. v. United States*, 595 F.Supp. 1152 (Ct. Int'l Trade 1984).

15. *See* part 2 *infra* setting forth the pertinent part of the lower court's remand. Specifically, that court ordered ITA to "make a determination" upon remand, absent the unrelated issue and in accordance with the facts ascertained previously.

16. Any other view would void the action for noncompliance with the statute.

lenging ITA's September 9, 1983, notice constitutes a collateral attack on that court's order of June 10, 1983, affirming ITA's remand determination. Before examining more closely this order, we examine the trial court's instructions prior to it, beginning with those of May 3, 1983, to ITA upon remand: [17]

Accordingly, the within proceedings are remanded to the ITA for reconsideration of the final results of the administrative review conducted by it insofar as it relates to the plaintiffs and, absent consideration of the conduct on the part of Cansulex [the unrelated issue], make a determination in the final results of its administrative review in accordance with the facts ascertained from its investigation of the dumping findings previously made relating to sales at not less than fair value by the plaintiffs.

The determination made by ITA in its reconsideration shall be submitted to this court within a period of thirty (30) days from and after the date of entry of the within Order.

Consequently, on June 1, 1983, the ITA sent the lower court the letter and memorandum mentioned in the "Background" section above. ITA conveyed this letter only to the trial court and did not serve it on the parties. The memorandum portion of that letter stated in pertinent part:

[Since] the Department is aware of no other circumstances in respect to Chevron which might prompt the Department not to invoke its revocation discretion at this time, it is concluded that a partial revocation of the finding should be issued in respect to Chevron.

Upon receipt of appropriate authorization by the Court of International Trade in this matter, an appropriate Federal Register notice will be prepared and published containing the details of the Court's remand directive and our actions in respect thereto.

Finally, the trial court, upon receipt and review of ITA's June 1 letter, declared on June 10: [18]

it is hereby

ORDERED that the Remand Determination made by the Department of Commerce, International Trade Administration, under date of June 1, 1983, be and is hereby affirmed.

The parties differ as to what the lower court's June 10 order affirmed. The Government and Chevron urge the correctness of the lower court's view, that the order affirmed ITA's determination including the facts ascertained from its dumping investigation and relating to sales at not less than fair value, and that this order is *res judicata*. In its own words, "[t]he [lower] court confirmed the ITA determination on remand revoking the antidumping duty order." [19]

Freeport counters that, since the only issue previously brought before the lower court was the propriety of ITA's attempted "arm-twisting," the lower court in its June 10 order was only confirming that, upon remand, ITA had indeed behaved itself by complying with the court's instructions to reconsider the antidumping review absent the unrelated issue. Freeport emphasizes that the ITA was still free, upon remand, to exercise its discretion not to revoke for any other unanticipated and valid reason.

█ Once again, Freeport has the better of the argument. First of all, it strains judicial credulity to believe that the lower court did indeed affirm an agency letter, a letter not even served upon any of the parties. More importantly, the contents of that letter expressed ITA's *intent* to the court to revoke the antidumping order, and the court's June 10 order confirmed that a revocation as regards Chevron *should* be issued. In other words, the reviewing court was granting the agency the green light to proceed with publication of its determination to revoke, now that the arbitrary and capricious aspect of the proceed-

**17.** *Chevron Standard Ltd.,* 563 F.Supp. at 1384.

**18.** *Chevron Standard Ltd.,* No. 83–55.

**19.** *Freeport Minerals Co.,* 583 F.Supp. at 590.

ing had been eliminated. At no time did the lower court consider the full substance of the revocation, including its factual findings, because those were never expressly before it. The challenged action, determination of revocation, was merely a possibility in 1982; it was not until ITA's *Federal Register* notice of September 9, 1983, that the determination of revocation was published and final.

■ Intervenor Chevron advances the idea that, once the lower court assumed jurisdiction of Chevron's challenge to the 1982 ITA notice, the court never lost jurisdiction over the case. Accordingly, all of ITA's subsequent actions upon remand were taken pursuant to the court's authority, not under ITA's statutory authority in sections 1675 and 1516, according to Chevron.

This contention—in effect, that ITA abandons the carefully wrought statutory scheme of the antidumping law once it returns to a case upon remand—flies in the face of Congress' detailed and painstaking efforts to create a procedurally precise and substantively valid avenue of relief for domestic producers confronting unfairly traded (dumped) imports. Certainly neither ITA nor the courts are free to abandon the statutory framework when a case is remanded. Congress has granted the lower court broad powers of relief, including authority to issue "orders of remand,"[20] but nowhere has it granted that

court authority to assume control of an agency case, once that case has come to it for judicial review, and retain control over it regardless of the statutes which the agency must follow.[21]

In sum, the lower court's holding on collateral attack suffers from the same fault as the timeliness issue. Having had no previous opportunity to attack the determination of revocation as to Chevron, Freeport cannot be charged with collaterally attacking the court's June 10, 1983, order.[22] Accordingly, we reverse the lower court's holding that Freeport is precluded from maintaining this action by the court's June 10, 1983, order.

### 3. *Laches*

■ Finally, the Government contends that Freeport should be barred from challenging the ITA's September 1983 notice on the grounds of laches. This theory founders on the same rock of confusion as that of the preceding two theories—namely, that Freeport should have sought review of the 1982 order.

The order of the court below dismissing Freeport's appeal is reversed, and Freeport may proceed accordingly.

**REVERSED.**

---

**20.** 28 U.S.C. § 2643(c)(1). We note for purposes of comparison that our predecessor court, the Court of Claims, frequently fashioned relief requiring, after remand, that counsel advise the court by letter to the trial judge of the status of the remand proceedings, and that proceedings before the Court of Claims be stayed for a stated period from the date of remand. *See, e.g., Blake Constr. Co. v. United States,* 597 F.2d 1357, 1360, 220 Ct.Cl. 56 (1979).

**21.** *Cf. Roquette Freres & Roquette Corp. v. United States,* 554 F.Supp. 1246, 5 C.I.T. 239 (1983), in which the lower court retained jurisdiction over an action challenging an antidumping order, while it remanded the material injury determination of the International Trade Commission for redetermination and return to the court within 60 days. That situation differs from the one here, in which, upon remand, the ITA ex-

pressed its *intent* to revoke, the lower court concurred, and several months later ITA published in the *Federal Register* an official revocation. Both cases are similar in that the agencies, in reconsidering their determinations upon remand, did so within their prescribed statutory boundaries.

**22.** *Cf. Bethlehem Steel Corp. v. United States,* 742 F.2d 1405 (Fed.Cir.1984), in which the court held timely filed a domestic steel manufacturer's challenge to an ITA countervailing duty order, reversing the lower court's holding that it was untimely. This court examined carefully both the *Federal Register* titles of ITA's determinations and the substance and logic of those determinations to reach its conclusion, which concerned a provision of the complex statutory procedure related to, but not the same as, that here.