**AL TECH SPECIALTY STEEL CORP., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Court No. 84–08–01192.**

United States Court of
International Trade.

April 22, 1986.

Collier, Shannon, Rill & Scott (David A. Hartquist, Paul C. Rosenthal, Jeffrey S. Beckington), Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Platte B. Moring, III, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

Kirkpatrick & Lockhart (Glenn R. Reichardt), Washington, D.C., for proposed intervenor.

## OPINION

RESTANI, Judge:

Plaintiffs filed a timely summons and complaint pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) (1982 & West Supp.

1986), contesting an early antidumping determination made by the International Trade Administration (ITA) of the United States Department of Commerce (Commerce).[1] Plaintiffs' complaint alleged that ITA should have adjusted the cost of production calculation for Arbed Saarstahl GmbH (Saarstahl), one of the West German producers of the product under investigation, to account for domestic subsidies alleged to benefit that company. On February 18, 1985, plaintiffs filed a Motion for Judgment upon an Agency Record pursuant to Rule 56.1 of the Rules of this Court.

After examining plaintiffs' motion and the administrative record filed in this action, ITA concluded that it had erroneously neglected to address the above-mentioned issue. A consent order was then issued by this court suspending all proceedings in this action pending a determination on remand by ITA.

On remand, ITA again decided that subsidies should not be included in calculating the cost of production. ITA did, however, increase the dumping margin for Saarstahl from 8.09% to 19.35%, on the grounds that ITA had allegedly committed certain errors and omissions in the calculation performed in the early determination. Before the court at this time is defendant's motion to dismiss for lack of jurisdiction and Saarstahl's motion to intervene.

▮ To support its motion to dismiss for lack of jurisdiction, defendant relies primarily on the Federal Circuit's decision in *Freeport Minerals Co. v. United States,* 758 F.2d 629 (Fed.Cir.1985). The *Freeport Minerals* appeal arose out of the events surrounding the Court of International Trade's (CIT's) decision in *Chevron Standard Ltd. v. United States,* 5 CIT 174, 563 F.Supp 1381 (1983). In that action, Chevron Standard, Ltd. (Chevron) challenged ITA's decision to postpone revocation of an antidumping order. ITA had made a preliminary determination in an administrative review that Chevron and four other Canadi-

an companies had refrained from selling the subject merchandise in the United States at less-than-fair value for a sufficient period of time to warrant revocation of the antidumping order as to the five companies. 46 Fed.Reg. 21,214, 21, 215–16 (1981). In the final results of administrative review, however, ITA postponed revocation as to three of the five companies, including Chevron, in an attempt to have these three companies encourage another Canadian company, of which they were significant stockholders, to provide data sought by ITA. 47 Fed.Reg. 31,911, 31,912 (1982). The court in *Chevron Standard,* 5 CIT at 178, 563 F.Supp. at 1384, found ITA's failure to revoke the antidumping order as to Chevron to be unreasonable and remanded the case to ITA with an order to make a new determination in accordance with ITA's earlier findings. Upon remand, ITA notified the court of its intent to revoke the antidumping order as to Chevron and the court issued an order affirming this remand determination. ITA then published notice of the revocation in the Federal Register. 48 Fed.Reg. 40,760, 40,761 (1983). Freeport Mineral Company (Freeport Minerals) filed suit to challenge ITA's remand determination and the CIT dismissed the action. *Freeport Minerals Co. v. United States,* 7 CIT ——, 583 F.Supp. 586 (1984), *rev'd,* 758 F.2d 629 (1985). The court held that Freeport Minerals' suit was untimely because the company failed to timely challenge ITA's administrative review determination made prior to remand. 7 CIT at ——, 583 F.Supp. at 589–90. In addition, the suit was barred as a collateral attack because, according to the court, the CIT's order affirming ITA's remand determination was *res judicata. Id.* at ——, 583 F.Supp. at 590–91. The Federal Circuit reversed on appeal, 758 F.2d 629 (Fed.Cir. 1985), and it is this opinion which, according to defendant here, dictates that this court lacks jurisdiction over the case at bar.

---

1. *Tool Steel from the Federal Republic of Germany, Early Determination of Antidumping Duty,* 49 Fed.Reg. 29,995 (1984).

On the collateral estoppel issue, intervenor-Chevron argued to the appellate court in *Freeport Minerals* that having assumed jurisdiction over Chevron's challenge of ITA's decision to postpone revocation, the CIT never lost jurisdiction over the case. Thus, Chevron claimed, ITA's decision on remand was made pursuant to the CIT's authority rather than under ITA's statutory authority. It would follow from Chevron's argument that the remand determination was *res judicata* and Freeport Minerals would therefore be collaterally estopped from challenging that determination before the CIT. The Federal Circuit rejected this argument and stated:

Congress has granted the lower court broad powers of relief, including authority to issue "orders of remand," but nowhere has it granted that court authority to assume control of an agency case, once that case has come to it for judicial review, and retain control over it regardless of the statutes which the agency must follow.

758 F.2d at 636 (footnotes omitted).

From this, defendant here argues that upon remand this court lost jurisdiction over plaintiff's action.

The court cannot agree, however, that *Freeport Minerals* controls the case at bar in the way defendant contends. As noted, plaintiff here filed an action with this court to contest ITA's failure to include subsidies in calculating the cost of production in an antidumping proceeding. In its early antidumping determination, prior to remand, ITA addressed a comment in which petitioners at the administrative level contended that subsidies should be so included. ITA rejected this contention, stating that "those costs recorded in the manufacturer's books and records ... fairly represent the costs of producing the product." 49 Fed.Reg. 29,995, 29,996 (1984). Saarstahl's cost of production was therefore calculated, as in the antidumping duty order, without regard to subsidies.

On remand, ITA responded to additional comments submitted on the subsidies issue and again concluded that subsidies should not be included in the calculation of the cost of production. As stated by ITA in its remand results submitted to this court,

[ITA] also considered the issue of whether it should add the amount of subsidies received by Saarstahl to cost in calculating cost of production.

To calculate Saarstahl's production costs, we used the cost recorded in the company books and records and *reaffirm our position* that these recorded costs fairly represent Saarstahl's cost of producing the product.

*Tool Steel From the Federal Republic of Germany; Remand Results of Early Determination of Antidumping Duty* at 9 (October 8, 1985) (emphasis added). Thus, unlike *Freeport Minerals*, ITA here did not reach a "new determination" on the relevant issue but, rather, simply gave additional consideration to its initial determination and reaffirmed that determination. Plaintiff is evidently still dissatisfied with ITA's conclusion on the subsidies issue and thus wishes to proceed with its suit against the government. Defendant, however, claims that plaintiff must file a new action now that the remand determination has been published. 51 Fed.Reg. 10,071 (1986).

Had ITA issued a "new determination" on remand reversing its earlier position, a party who had "no previous opportunity to attack the determination," *Freeport Minerals*, 758 F.2d at 636, might successfully argue that *Freeport Minerals* protected him from being barred by collateral estoppel or timeliness claims from challenging the "new determination." It does not necessarily follow from this or from the previously quoted language from *Freeport Minerals*, however, that the very act of remanding a case for further consideration deprives this court of jurisdiction over the suit. *Cf. Cabot Corp. v. United States*, 788 F.2d 1539 (Fed.Cir.1986). As noted by this court in *Roquette Freres v. United States*, 6 CIT ——, Slip Op. 83–137 at 4 (Dec. 31, 1983), *appeal docketed*, No. 84–856 (Fed.Cir. Feb. 27, 1984) "[j]urisdiction once vested in the court is neither so fleeting nor illusory as to dissipate upon the

court's exercise of its inherent discretionary power to require further deliberation by the administrative body." [2] Despite remanding an administrative decision for further consideration, the court in *Roquette Freres* retained jurisdiction over the cause of action and therefore refused to permit plaintiff to initiate a new suit to challenge the remand determination. *Id.* Similarly, in the case at bar, this court retained jurisdiction following remand and, therefore, will not require plaintiff to file a new action to challenge the very issue already before the court; namely, whether ITA was required to include subsidies in calculating Saarstahl's cost of production. To hold otherwise would "serve no purpose other than to impede sound judicial administration." *Id.* Thus, defendant's motion to dismiss for lack of jurisdiction is denied.

Saarstahl moves to intervene in this action, pursuant to Rule 24 of the Rules of this Court and 28 U.S.C. § 2631(j) (1982), to challenge ITA's recalculation of the dumping margin on remand. Saarstahl does not challenge, however, the remand results on the issue of subsidies raised by plaintiffs in their complaint. Plaintiffs and defendant resist the intervention on the grounds that it raises issues not in dispute between the original parties.

Intervention in a suit before this court challenging an antidumping investigation is governed by 28 U.S.C. 2631(j)(1)(B),[3] and Rule 24 of the Rules of this Court.[4] On the face of the statute and the rule, Saarstahl would appear to be entitled to intervene as of right, but certain constraints have been read into these provisions. In particular, the Court of Customs and Patent Appeals ruled in *Sumitomo Metal Industries v. Babcock and Wilcox, Co.* 69 CCPA 75, 81–83, 669 F.2d 703, 707–08 (1982), that timeliness is a requirement of the right to intervene granted under Rule 24(a)(1) where a "statute of the United States confers an unconditional right to intervene." CIT Rule 24(a)(1). The timeliness aspect has been further defined by this court in at least two cases. In both *Fuji Electric Co. v. United States*, 7 CIT ——, 595 F.Supp. 1152, 1153 (1984) and *Nakajima All Co. v. United States*, 2 CIT 170, 172 (1981), this court ruled that an intervenor who challenges aspects of an antidumping determination not challenged by the original parties must comply with the statutory time limits for filing the original action.

If the proposed intervenor here wanted to challenge an additional aspect of the original determination, most likely it would be time barred. As to the new determination, on remand, increasing Saarstahl's antidumping duties, Saarstahl may challenge that determination by filing a suit. *See Freeport Minerals*, 758 F.2d at 634, 636. Furthermore, if the intervenor wanted to join in the dispute between the original parties, it might or might not be permitted to do so depending on the analysis of the factors discussed in *Sumitomo*. 69 CCPA at 81, 669 F.2d at 707. This intervenor, however, does not wish to join in the original dispute. Its complaint is new.

---

**2.** This statement is no less true where, as here, remand is consented to by the parties.

**3.** 28 U.S.C. § 2631j(1)(B) (1982) reads:

(j)(1) Any person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such ation, except that—

. . . .

(B) in a civil action under section 516A of the Tariff Act of 1930, only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may intervene as a matter of right. . . .

**4.** Rule 24(a) of the Rules of the Court of International Trade reads:

(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ Saarstahl argues that it has an interest in the dispute at hand because the original dispute resulted in a remand order setting forth a determination which injured Saarstahl. The recalculation of the dumping margin, however, was a wholly independent act of ITA. It has nothing to do with the case at hand and must rise or fall on its own. Thus, Saarstahl is not concerned with the issues arising in the original dispute between the parties and may not intervene as of right under 28 U.S.C. § 2831(j)(1)(B) and Rule 24(a).

■ Saarstahl argues that it should, in the alternative, be allowed to intervene permissively under Rule 24(b).[5] The government contends, however, that there is no permissive intervention in a proceeding challenging an antidumping determination. The government is clearly correct, insofar as a person who does not participate in the proceeding below may not intervene, even if the conditions of Rule 24(b)(2) are met. 28 U.S.C. § 2631(j)(1)(B). In this case, however, Saarstahl did participate. Nevertheless, there is no ground for permissive intervention here under Rule 24(b)(2), because intervenor's claim raises no issues in common with plaintiff's cause of action. If there had been a question of law or fact in common with the main proceeding, under the statutes and judicial precedent applicable in this court, intervention most likely would have been permitted under Rule 24(a) as of right. Whether all interventions in actions brought pursuant to 28 U.S.C. § 1581(c) must be of right need not be decided here.[6] Saarstahl can sustain no grounds for intervention of any kind.

Furthermore, the court is guided by the clear judicial policy of keeping these already complicated cases as free of unnecessary confusion as possible. Neither the original parties nor the proposed intervenor, however, should be prejudiced by adherence to this policy. The original parties might be prejudiced by Saarstahl's intervention, but Saarstahl is not prejudiced by the denial of its motion to intervene. Saarstahl is free to challenge in an independent action, both the act of ITA in amending its margin determination and the appropriateness of the margin itself.

As to the subsidies issue, plaintiff is already protected by its presently filed action, but to avoid any further procedural quagmire, now that the new determination has been published in the Federal Register, plaintiff might move to amend its complaint to challenge the new determination as to the subsidies issue.

For these reasons, the request for intervention is denied.

---

**5.** Rule 24(b) of the Rules of the Court of International Trade reads:

 **(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statue or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**6.** One might argue that the judicial interpretations of 28 U.S.C. § 2631(j)(1)(B) have rendered all interventions in these cases permissive in that the right of intervention is conditioned. See CIT Rule 24(b)(1). On the other hand, the bar against intervention for failure to raise new challenges within the statutory time frame admits of no discretion, and in that sense, is not permissive.