**BORLEM S.A.—EMPREEDIMENTOS INDUSTRIAIS and FNV—Veiculos E Equipamentos S.A., Plaintiffs/ Cross–Appellants,**

v.

**The UNITED STATES of America and U.S. International Trade Commission, and The Budd Company, Defendants– Appellants.**

Nos. 90–1085 to 90–1087.

United States Court of Appeals, Federal Circuit.

Sept. 6, 1990.

Rehearing Denied Oct. 25, 1990.

Christopher Dunn, of Willkie Farr & Gallagher, Washington, D.C., argued for plaintiffs/cross-appellants. With him on

the brief were William H. Barringer and Daniel L. Porter.

George Thompson, Lyn M. Schlitt, Gen. Counsel, and James A. Toupin, Asst. Gen. Counsel, of the U.S. Intern. Trade Com'n, Washington, D.C., argued for defendant-appellant, the U.S.

Matthew T. McGrath, of Barnes, Richardson & Colburn, Washington, D.C., argued for defendant-appellant, the Budd Co. Of counsel on the brief were James H. Lundquist and Peter A. Martin, of Barnes, Richardson & Colburn, and Herman Foster, Associate Gen. Counsel, the Budd Co.

Before MARKEY[*] and LOURIE, Circuit Judges, and BROWN, District Judge[**].

LOURIE, Circuit Judge.

This case is an interlocutory appeal from an order of the Court of International Trade; it concerns the authority and power of the International Trade Commission to reconsider a determination it has made under the federal antidumping laws when directed to do so by that court. Because we conclude that the court did not err as a matter of law, we affirm its decision.

## BACKGROUND

The facts of this case have been more fully set forth in *Borlem S.A.—Empreedimentos Industriais v. United States*, 718 F.Supp. 41 (CIT 1989), and are partially repeated here for convenience. On May 23, 1986, the defendant-appellant Budd Company filed antidumping petitions with the Department of Commerce and the International Trade Commission on behalf of the United States industry producing tubeless steel disc wheel products (TSDWs). The petitions alleged that Brazilian manufacturers, of which there were only two, Borlem S.A. —Empreedimentos Industriais (Borlem) and FNV—Veiculos E Equipamentos S.A.

(FNV), were importing TSDWs into the United States and selling them at less than fair value (LTFV) within the meaning of the federal antidumping laws, 19 U.S.C. § 1673 (1980) *et seq.*, and that an industry in the United States was materially injured or threatened with material injury by reason of these imports.

On March 13, 1987, Commerce (International Trade Administration) found that the LTFV dumping margins were 15.25% for Borlem and 19.93% for FNV. The International Trade Commission (ITC) subsequently determined that an industry in the United States was threatened with material injury by reason of these imports. Commerce then issued an antidumping duty order and an amendment to its final LTFV determination correcting certain clerical errors.

Borlem and FNV commenced two actions on May 28, 1987, in the Court of International Trade, one challenging the final LTFV determination by Commerce and the other challenging the final injury determination by the Commission. The latter is this case. On June 15, 1988, the court, at the request of Commerce, remanded the final LTFV determination and antidumping duty order to Commerce with instructions to recalculate the dumping margins and to correct all clerical, methodological and transcription errors.

The remand resulted in a second-amended final LTFV determination and amended antidumping duty order. The second-amended final LTFV determination found Borlem to have an LTFV dumping margin of 10.84% and FNV, a margin of 0.04%. Commerce deemed FNV's margin to be *de minimis* and excluded it from its amended antidumping duty order.

On March 22, 1989, at the request of the Commission in this case, the court, pursuant to its power to remand under 28 U.S.C. § 2643(c)(1) (1988)[1], remanded the matter

---

[*] Circuit Judge Markey vacated the position of Chief Judge on June 27, 1990.

[**] District Judge Garrett E. Brown, Jr. of the United States District Court for the District of New Jersey, sitting by designation.

1. 28 U.S.C. § 2643(c)(1) provides:

Except as provided in paragraphs (2), (3), (4), and (5) of this subsection, the Court of International Trade may, in addition to the orders specified in subsections (a) and (b) of this section, order any other form of relief that is appropriate in a civil action, including, but

to the Commission. The court instructed the Commission to decide whether it should reconsider its injury determination in light of Commerce's Second Amended Final Determination.

In accordance with that remand, the Commission reported to the court that it had no authority to undertake reconsideration of its decision except for the process provided for under 19 U.S.C. § 1675 (1980) (Section 751 of the Tariff Act of 1930) which was not applicable in the circumstances. The Vice Chairman of the Commission, Ronald A. Cass, dissented from this determination noting that "[t]he error that has apparently been made, and rectified, by the Department of Commerce is by no means a trivial one," also indicating that the record suggests at least "a very strong possibility that the error was outcome determinative." *Tubeless Steel Disc Wheels From Brazil*, USITC Pub. No. 2179 (Views on Remand in Inv. No. 731-TA-355) at 22. The court subsequently held that the Commission, upon a remand from the court, has the power to reconsider its determination and that the exercise of such power is discretionary on the part of the Commission. The court, accordingly, remanded once more and instructed the Commission that if it decided not to reconsider its determination, it should set forth its reasons. *Borlem S.A.—Empreedimentos Industriais v. United States*, 718 F.Supp. at 42.

Subsequently, the Commission and Budd moved under 28 U.S.C. § 1292(d)(1) (1982) [2] for an interlocutory appeal of that order. On September 1, 1989, the court granted the defendants' motions to amend and stay the order and plaintiffs' cross-motion to certify an additional question for appeal and certified the following interlocutory questions:

(1) whether or not the International Trade Commission has the authority and

power to reconsider its final affirmative threat of injury determination, when directed to do so by this court pursuant to its remand authority under 28 U.S.C. § 2643(c)(1) in light of the International Trade Administration's amended final determination of sales at less than fair value and amended antidumping duty order; and

(2) whether or not the exercise of such power or authority of reconsideration on remand by the Commission is discretionary.

In accordance with the requirements of the statute, Judge Carman included in his order of September 1, 1989, the necessary statement permitting this appeal, and this court permitted the appeal to be taken in its order of October 26, 1989.

## DISCUSSION

This court has jurisdiction of this appeal under 28 U.S.C. § 1292(d)(1). The issues in this case are those certified to this court by the trial court. We review the decision of the court as a question of law.

## THE FIRST QUESTION

■ The first question before us is whether the trial court erred in deciding under 28 U.S.C. § 2643(c)(1) that the International Trade Commission has the authority and the power on remand to reconsider its determination that the TSDW industry in the United States was threatened with material injury by reason of LTFV imports from Brazil in light of Commerce's Second–Amended Final Determination. As was stated by Judge Carman, the Court of International Trade has broad authority under 28 U.S.C. § 2643(c)(1) to require the Commission to reconsider its actions. At the time of enacting 28 U.S.C. § 2643(c)(1), the House Committee on the Judiciary stated that "[this subsection] is a general grant

not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition.

2. 28 U.S.C. § 1292(d)(1) provides in pertinent part:

when any judge of the Court of International Trade ... includes in [an interlocutory] order a statement that a controlling question of law

is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate determination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order....

of authority for the Court of International Trade to order any form of relief that it deems appropriate under the circumstances." H.R.Rep. No. 96–1235, 96th Cong., 2d Sess. 44, 61 (1980), *reprinted in* U.S.Code Cong. & Admin. News 1980, 7088, 7114. The Committee went on to state further that "[i]t is the Committee's intent that this authorization be deemed to grant the Court of International Trade remedial powers co-extensive with those of a federal district court." *Id.*

This court recently stated in *Rhone Poulenc, Inc. v. United States*, 880 F.2d 401, 402 (Fed.Cir.1989) that "[the Court of International Trade] is a national court under Article III of the Constitution" and noted that the legislative history of 28 U.S.C. § 1585 (1980)[3] provides the Court of International Trade "with all the necessary remedial powers in law and equity possessed by other federal courts established under Article III of the Constitution." *Id.* (citing H.R.Rep. No. 96–1235, 96th Cong., 2d Sess. 18–20 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 3729–3731).

Appellant ITC challenges this decision on several grounds. First, it asserts that its interpretation of the antidumping law is entitled to great judicial deference and is reasonable. It states that the question for the trial court was whether the Commission's interpretation is "sufficiently reasonable" to be acceptable to a reviewing court, *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978), and it argues that its interpretation was reasonable.

■ We believe that the trial court gave appropriate deference to the Commission, but arrived at the correct conclusion. It noted its obligation to give substantial weight to an agency's interpretation of a statute it administers, but felt it could not defer to an interpretation of the law where there are compelling indications that that interpretation is incorrect.[4] It concluded that the Commission's assertion that it lacks power to reconsider its final determination on judicial remand is unreasonable and an impermissible construction of the statute.

■ We agree with the trial court's interpretation of its powers and believe that Congress' desire for speedy determinations on dumping matters should not be interpreted as authorizing proceedings that are based on inaccurate data. The remand authority given to the court by 28 U.S.C. § 2643(c)(1) demonstrates Congress' concern that the court have appropriate authority in trade cases to deal with the issues that come before it. The fact that, based on the second amended determination, FNV was shown not to be dumping beyond a *de minimis* amount was of sufficient importance that the Commission might have determined that there was no material injury or threat of injury at all. It is understandable and justifiable that the court might wish to remand such a case.

A court is indeed obligated to give deference to an agency acting within its scope of responsibility. However, deference is not owed to a determination that is based on data that the agency generating those data indicates are incorrect. The law does not require, nor would it make sense to require, reliance on data which might lead to an erroneous result.

■ Moreover, such deference should not apply when the issue is the legal scope of an agency's authority. *See Social Sec. Bd. v. Nierotko*, 327 U.S. 358, 369, 66 S.Ct. 637, 643, 90 L.Ed. 718 (1946). Also, deference does not require relinquishment of responsibility. The trial court did give consideration and respect to the Commission's

---

**3.** 28 U.S.C. § 1585 states that "the Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States."

**4.** We also note that 28 U.S.C. § 2643(b) (1980) also explicitly provides that when "the Court of International Trade is unable to determine the correct decision on the basis of the evidence in any civil action, the court ... may order such further administrative or adjudicative procedures as the court considers necessary...." Since the trial court did not premise its authority on this provision, we will comment on it no further other than to indicate its possible applicability to this case. *See Jarvis Clark Co. v. United States*, 739 F.2d 628, 629 (Fed.Cir.1984).

938

views. It did not finally agree with them. We do not think that was error. Reconsideration pursuant to court remand order seems clearly within the compass of section 2643(c)(1), provided the directions to the Commission do not contravene the statute or improperly infringe on the decision-making authority of the agency.

■ The Commission also argued that the antidumping statute requires it to base its determination on Commerce's original determination. It relies on the language of 19 U.S.C. § 1673d(b)(1) (1980) which provides that "the Commission shall make a final determination ... with respect to which the administering authority has made an affirmative determination under subsection (a)(1) of this section." It interprets that section as limiting the right of the Commission to make a determination of injury based only on a Commerce determination made within the timetable of section 1673d(a) (1980).

We appreciate the Commission's desire to adhere to the time requirements of the statute. Nonetheless, we do not believe the trial court erred in considering that it had the authority to order a redetermination outside of that time frame. Congress clearly wanted prompt consideration of antidumping petitions and it set out a formula for the Commission and Commerce to accomplish that goal. The statute, however, says nothing about redeterminations. It does not provide for them, nor does it forbid them. Redetermination of an injury finding on remand by a court in no way interferes with the statutory scheme. Indeed, the Commission's interpretation would be inconsistent with other parts of the statute providing for judicial review. *See* 19 U.S.C. § 1516a (1988).

■ The Commission has noted that the Omnibus Trade and Competitiveness Act of 1988 granted Commerce the power to correct ministerial errors in its final determination within a reasonable time of their issuance. *See* 19 U.S.C. § 1671d(e), 1673d(e). It reasons from this that Congress clearly intended the Commission not to have post-determination alteration power. That argument is not persuasive. A provision permitting one agency to correct ministerial errors is not tantamount to the preclusion of another agency correcting substantive errors.

The Commission criticizes the trial court's citation of 19 C.F.R. § 207.46 (1989), which states, "nothing in § 207.45 (the regulation implementing Section 751 of the Act) shall limit the inherent authority of the Commission to issue an appropriate modification, clarification, or correction of a determination within a reasonable time of its issuance," for inherent authority by the Commission to reconsider its determination. The Commission states that this regulation has been used solely to correct typographical and other non-substantive errors.

We do not read the Commission's regulation as narrowly as it seems to read it. The language "modification, clarification, or correction" would appear to provide authority to redetermine an injury finding. The fact that the regulation has only been used for non-substantive corrections in the past should not preclude it from being used more broadly within its terms when appropriate. However, it is not necessary here to interpret the Commission's own regulation. The issue before us is the court's authority to require the Commission to act, not the Commission's right to act under its own rules.

■ The Commission also argues that its reconsideration as ordered by the trial court would interfere with the statutory division of responsibility between Commerce and the Commission that avoids the possibility of one agency questioning a decision of the other. The Commission's position is not well taken. Redetermination on remand in this case in no way amounts to sanction for one agency on its own to second-guess another agency. Commerce itself has stated that its earlier determination of margin was in error. By making its redetermination, the Commission is obviously not meddling in Commerce's work. The latter, in making its own redetermination, had to expect that it would be the basis for a Commission redetermination.

■ The Commission posits a variety of administrative costs and burdens that would result if it were required to make a redetermination as ordered by the trial court. We do not minimize these concerns or even attempt to evaluate them. Suffice it to say that the Commission had the opportunity to raise its concerns with its reviewing court and the latter felt they did not predominate over the need for accuracy. We do not believe that was legal error. The trial court's right to order a reconsideration is not to be confused with the wisdom of its decision to do so.

■ The Commission is concerned with an "endless *renvoi*," noting that the second-amended Commerce determination is on appeal at the trial court. Its point is a thoughtful one, questioning whether it should be basing a new determination on data that may possibly be thrown out. Once again, that was a matter that the trial court should or could have been apprised of and we do not consider the court's decision to be legal error. The Commission notes cases where there exists the possibility of having to make multiple determinations in a case, thereby frustrating Congress' desire for expedition. We note that this case has already been to the Commission's reviewing court for three decisions. Expedition would thus seem to encourage the use of judicial authority to cause the involved agencies to make any needed determinations promptly, rather than to decline to act on the basis of an asserted lack of authority on the part of the reviewing court. Moreover, expedition is not the only value needed in the implementation of the statute; accuracy is also important. In any event, the possibility of multiple determinations by the Commission does not lead to a conclusion of error by the trial court.

■ The Commission also asserts that Section 751(b) of the Tariff Act of 1930, 19 U.S.C. § 1675(b) (1980), provides the only basis for the Commission to revisit its determinations based on subsequent events. Regardless of this perceived limitation on the Commission's own authority, Section 751(b) does not restrict the court's authority where the court decides that a determi-

nation properly under review is based on erroneous data.

■ The Commission has strongly argued that the trial court erred in utilizing evidence outside "the record," which is statutorily defined as "all information presented to or obtained by the Commission during the course of the administrative proceeding ... and a copy of ... all notices published in the Federal Register." 19 U.S.C. § 1516a(b)(2) (1979). Legislative history is quoted to the effect that the court is not to conduct a trial *de novo*. The Commission is correct regarding affirmance or reversal of a ruling under review. However, a reviewing court is not precluded under this standard from considering events which have occurred between the date of an agency (or trial court) decision and the date of decision on appeal. Where such intervening events are properly brought to the attention of the reviewing court, that court may rely on that occurrence and typically will remand for consideration by the decision-maker. *Cf.* 7 *Moore's Federal Practice* § 60.26[3] 1990.

The Commission's reliance on *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), is thus misplaced. In *Vermont Yankee*, the Supreme Court held that the reviewing court exceeded its power of review when it imposed on an agency certain procedural requirements not mandated by statute, and it improperly intruded into the agency's decision-making authority.

The situation here is significantly different because we have an incorrect fact determination, corrected by the governmental agency that issued it, while the appeal was pending, which determination when properly considered, may lead to a different result. It is quite a different matter from *Vermont Yankee* for the court to remand for reconsideration by an agency of a corrected fact determination by a sister agency whose data provide the raw material for its own determination. *Vermont Yankee* does not preclude remand where the decision under review rests on an erroneous fact.

■ Appellant Commission asserts that in *Freeport Minerals Co. v. United States*, 758 F.2d 629 (Fed.Cir.1985), this court, in stating that Congress has not granted the Court of International Trade authority to assume control of an agency case regardless of the statutes which the agency must follow, *Id.* at 636, precluded the directive in the remand by the lower court in this case. We discern no overreaching by the trial court here. A directive to the Commission to reconsider in light of the intervening correction by Commerce is no different from a reversal and remand for reconsideration because a fact relied on is unsupported by the evidence.

■ The Commission has also criticized the use of judicial notice by the trial court. It conceded that *if* it were relevant to this proceeding, the second-amended determination is the type of fact of which judicial notice could be taken. The Commission felt it was not relevant presumably because it was not on the record compiled by the Commission. The short answer to this point is that the new determination is on the record, having been published in the Federal Register. Moreover, we believe it is circular reasoning to state that a fact cannot be judicially noticed unless it is so established by being on the record, that judicial notice is not necessary. Rather than this court or the trial court deciding on the accuracy or significance of these new data, all we are doing is recognizing that new data exist that the Commission should evaluate. Thus, the trial court did not err in taking judicial notice of the Second–Amended Final Determination.

Finally, the Commission asserts that the court erred in granting a remedy that is contrary to the statute. It argues that 28 U.S.C. § 2643(c)(1), the remand provision, only applies within the scope of judicial review, which is limited to the administrative record. It cites *NTN Bearing Corp. of America v. United States*, 892 F.2d 1004 (Fed.Cir.1989), for the proposition that the power of the trial court may not be used to create a right, but only to enforce an existing right.

*NTN* is not pertinent to the issue on appeal. In that case, the question was whether the trial court's issuance of an injunction was correct after grant of partial summary judgment. This court's holding that the trial court exceeded its powers was based on the express limitation of a statute. No similar restriction on the court's remedial authority exists here.

Appellant Budd makes arguments similar to those of the Commission. One particular point raised by Budd relates to the trial court's taking judicial notice of the second-amended Commerce determination, stating that the use of judicial notice is properly applied only to facts not subject to reasonable dispute. They note that the accuracy of that determination is now under review by the trial court.

It is of course possible that the trial court could modify the second-amended Commerce determination. If that occurred, then the parties could consider how to proceed in the face of that new fact. In the present circumstances, however, what the trial court has now taken judicial notice of is not the new margin determinations themselves, but the fact that a new and different determination has been made based on the premise that the earlier one was incorrect. That action, by the same government agency that generated the first determination, certainly seems to us to be a fact of which judicial notice may be taken.

Budd also argues that this case is not ripe for decision by the trial court since the accuracy of the second-amended determination has not been finally adjudicated.[5] It is concerned that a game of procedural "ping-pong" might result if the Commission acts on the basis of a margin determination that itself is under challenge. However, it is for the trial court in reviewing the action (or nonaction) of the Commission to consider whether a stay pending the court's own decision on appeal of the second-amended determination is appropriate; that may

5. On September 22, 1988, Budd filed an action with the Court of International Trade contesting the second-amended final LTFV and antidumping determinations.

well be a sensible course of action. We merely review the legal propriety of the Court of International Trade's actions and we do not find any legal error to have been committed in its remand.

Appellees have cited several cases for the proposition that the Commission may reconsider a decision based on later-discovered evidence that a first determination was premised on incorrect data. In *Badger–Powhatan v. United States*, 633 F.Supp. 1364, 10 CIT 241, *appeal dismissed*, 808 F.2d 823 (Fed.Cir.1986), the Court of International Trade held that an International Trade Commission subsequent final injury determination rendered the Commerce Department's earlier final LTFV determination erroneous and ordered Commerce to amend its final LTFV determination. The Commission here argues that *Badger–Powhatan* is inapplicable to the present situation in that its holding was premised on the fact that the error there could have been corrected during the statutory period provided. Appellee argues that *Badger–Powhatan* is "precisely analogous" to the present case. We do not need to decide how precisely analogous *Badger–Powhatan* is to our case, but believe that the fact that the error could have been corrected earlier should be irrelevant since the governing fact in *Badger–Powhatan* was the presence of error which the trial court felt the agency (Commerce) should correct. That is the case here.

■ In *Sprague Electric Co. v. United States*, 488 F.Supp. 910 (1980), 84 Cust.Ct. 243, the Customs Court remanded the case to the Commission when it was discovered that the official import statistics on which the Commission had relied were incorrect. The Commission argues that *Sprague* is not on point because the Commission in that case had been alerted to a possible inaccuracy in the data during its investigation. We are not persuaded by this argument, however, since we are considering here the power of the Court of International Trade to remand for reconsideration, and the fact that the Commission might have been warned of a possible inaccuracy in its data hardly constitutes a meaningful distinction over a case where it was not warned. A decision based on inaccurate data provides a sound reason for a court to order reconsideration to correct a determination based on those data, whether the Commission knows of the incorrect data or not.

■ Finally, *Alberta Gas Chems. Ltd v. Celanese Corp.*, 650 F.2d 9 (2d Cir.1981), is argued by appellee to be relevant. In that case the issue was whether to remand the matter to the Commission to determine whether, as subsequently alleged, the original dumping determination was tainted with perjury. The Second Circuit did remand, and appellant Commission here asserts that that case is distinguishable, being based on the need for an agency to ensure the integrity of its own processes. While that was clearly an important factor in *Alberta*, the relevant factor for us is that the appellate court had and exercised the power to remand for a redetermination based on facts discovered after the appeal. Fraud may be more egregious than mere error, but this court sees no legal error in the Court of International Trade having exercised its power to correct an error uncovered after appeal that is based on other than fraud.

## THE SECOND QUESTION

■ The second question certified for consideration by this court is whether the exercise of the power or authority of reconsideration on remand by the International Trade Commission is discretionary. First, we note that the trial court did make its order discretionary in ordering the Commission to consider *whether* in its discretion it should reconsider its final determination. To the extent that we have concluded that the court has the authority to order the Commission to reconsider, we see no reason why it should lack authority to order the Commission to exercise discretion in considering whether to make a redetermination. The briefs of appellants do not argue that discretion should not be granted because they consider the trial court entirely lacked power to require the Commission to make a redetermination; appellees, on

942

the other hand, consider the trial court erred in giving the Commission that discretion. They believe it should have been required to make a redetermination.

As indicated above, we are aware of no reason why the trial court lacked the power to give the Commission discretion on remand. On the other hand, we fail to understand why it did give the Commission leeway. It seems apparent that the Commission is unwilling to conduct a redetermination unless ordered to do so, and, if the trial court felt that the new Commerce Department data justified its intervention in the resolution of this dumping proceeding, one would think that it justified requiring the Commission to make the redetermination rather than asking it again to use its discretion. While we see no legal error in the trial court's determination on this point, we recommend on remand that the court itself reconsider whether it wishes to provide discretion to the Commission.

We have considered the other arguments raised by appellants concerning the issues on appeal and do not find them persuasive in asserting that the trial court committed error.

In summary, we answer the first of the certified questions in the affirmative and the second with a qualified affirmative, and we remand for further proceedings consistent with this decision.

COSTS

Costs to appellees.

AFFIRMED AND REMANDED.