Slip Op. 25-16

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD.,<br><br>    Plaintiff,<br><br>and<br><br>LUMBER LIQUIDATORS SERVICES, LLC,<br><br>    Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,<br><br>    Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 22-00190 |

## OPINION AND ORDER

[Sustaining in part and remanding in part the U.S. Department of Commerce's Final Results of Redetermination Pursuant to the Second Remand Order in the antidumping duty review of multilayered wood flooring from the People's Republic of China.]

Dated:  February 18, 2025

Jeffrey S. Neeley and Stephen W. Brophy, Husch Blackwell LLP, of Washington, D.C., for Plaintiff Jiangsu Senmao Bamboo and Wood Industry Co., Ltd.

Mark R. Ludwikowski and Kelsey Christensen, Clark Hill PLC, of Washington, D.C., for Plaintiff-Intervenor Lumber Liquidators Services, LLC.

Kelly M. Geddes, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director.  Of counsel on brief was Christopher Kimura, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Timothy C. Brightbill, Stephanie M. Bell, Maureen E. Thorson, and Theodore P. Brackemyre, Wiley Rein, LLP, of Washington, D.C., for Defendant-Intervenor American Manufacturers of Multilayered Wood Flooring.

Choe-Groves, Judge:  The Court remands for a third time the determination of the U.S. Department of Commerce ("Commerce").

In summary, the Brazilian plywood import data contains objectively incorrect information, which Commerce chose to address by deleting one month of import data, rather than reopening the record to obtain accurate data.  Commerce's deletion of the one month of import data resulted in a distortion that increased the Brazilian plywood surrogate value ("SV") by 453%, thus leading one to question whether Commerce's repeated insistence on using objectively incorrect Brazilian data is results-driven or cherry-picking.

For the reasons explained below, the Court remands Commerce's adjustment of surrogate value data for plywood.  The Court sustains Commerce's selection of Brazil as the primary surrogate country and the use of Malaysian data for oak log inputs.

Before the Court is Commerce's second remand redetermination in the administrative review of the antidumping duty order on multilayered wood flooring from the People's Republic of China ("China") for the period of December 1, 2019, through November 30, 2020, filed pursuant to the Court's Opinion and Order in Jiangsu Senmao Bamboo & Wood Industry Co., v. United States ("Senmao II"), 48 CIT __, 698 F. Supp. 3d 1277 (2024).  Final Results of Redetermination Pursuant to Court Remand Order ("Second Remand Redetermination"), ECF No. 66-1; see also Final Results of Redetermination Pursuant to Remand Order ("Remand Redetermination"), ECF No. 55-1; Multilayered Wood Flooring from the People's Republic of China ("Final Results"), 87 Fed. Reg. 39,464 (Dep't of Commerce July 1, 2022) (final results of antidumping duty administrative review; 2019–2020) and accompanying Issues and Decision Memorandum for the Final Results of Antidumping Duty

Administrative Review: Multilayered Wood Flooring from the People's Republic of China; 2019–2020 (Dep't of Commerce June 24, 2022) ("IDM"), PR 245.[1]

## ISSUES PRESENTED

The Court reviews the following issues:

1. Whether Commerce's determination to select Brazil as the primary surrogate country, while using Malaysian data for oak log inputs, is supported by substantial evidence and in accordance with law; and

2. Whether Commerce's determination to adjust the Brazilian surrogate value data for plywood is supported by substantial evidence and in accordance with law.

## BACKGROUND

Commerce initiated the underlying administrative review on February 2, 2021. Initiation of Antidumping and Countervailing Duty Admin. Review, Multilayered Wood Flooring from the People's Republic of China, 86 Fed. Reg. 8166, 8169–71 (Dep't of Commerce Feb. 4, 2021). Commerce conducted an administrative review of the antidumping duty order on multilayered wood flooring from China for the period from December 1, 2019, through November 30,

---

[1] Citations to the administrative record reflect the public record ("PR"), remand public record ("RPR"), and second remand public record ("2RPR") numbers filed in this case, ECF Nos. 48, 64, 72.

2020, and selected Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. ("Plaintiff" or "Senmao") as the mandatory respondent in the investigation. Id.; Commerce's Antidumping Administrative Review of Multilayered Wood Flooring from the People's Republic of China; 2019–2020: Respondent Selection Mem., PR 112.

In its Final Results, Commerce selected Brazil as the primary surrogate country, but it valued Senmao's oak and non-oak logs with Malaysian surrogate values. IDM at 9, 22; Multilayered Wood Flooring from the People's Republic of China ("Preliminary Results"), 86 Fed. Reg. 73,252 (Dep't of Commerce Dec. 27, 2021) (preliminary results of the antidumping duty administrative review, preliminary determination of no shipments, and rescission of review, in part; 2019–2020) and accompanying Decision Memorandum for the Preliminary Results of Antidumping Administrative Review ("PDM") at 17, PR 213. Commerce used Malaysian surrogate values because it determined that Brazilian surrogate values were not usable for oak and non-oak log inputs. Jiangsu Senmao Bamboo & Wood Industry Co. v. United States ("Senmao I"), 47 CIT __, 651 F. Supp. 3d 1348, 1357 (2023) (citing PDM at 17).

Commerce also adjusted the Brazilian surrogate values for plywood by excluding data that it determined to be incorrect regarding the quantity of plywood. IDM at 9. Commerce determined that the Spanish import data for 2020 were

incorrect because the data reported the same quantity of plywood in cubic meters ("m³") as it did in kilograms ("kg"). Id. Because the m³ unit measures volume and the kg unit measures mass, Commerce concluded that it was "illogical for the Spanish import data to report the same quantity in these two different units of measure." Id. Commerce removed this line of data from its calculation. Id. at 9–10. Ultimately, Commerce calculated Senmao's antidumping duty margin at 39.27%. Final Results, 87 Fed. Reg. at 39,465.

In Senmao I, the Court held that Commerce failed to provide a reasonable explanation to justify departing from its established practice of using one surrogate country and failed to support its determination with substantial evidence. Senmao I, 47 CIT at __, 651 F. Supp. 3d at 1357. The Court found that Commerce did not cite any record evidence to support its determination that Brazilian surrogate values regarding oak log inputs were highly questionable, inadequate, or unavailable. Id. Commerce lacked a sufficient basis to substitute input data from a second surrogate country. Id. at 1357–58. The Court found that Commerce relied on Exhibit 9 of Multilayered Wood Flooring from the People's Republic of China: American Manufacturers of Multilayered Wood Flooring ("AMMWF") Surrogate Value Comments ("AMMWF Surrogate Value Comments") ("Exhibit 9"), when determining to strike Spanish import data but never placed the document on the

record.  Id. at __, 651 F. Supp. 3d at 1361; AMMWF Surrogate Value Cmts., PR 179–82.

Because Commerce failed to cite necessary record evidence, failed to provide adequate explanations, and failed to include cited evidence on the record, the Court remanded for Commerce to reconsider its determinations.  Senmao I, 47 CIT at __, 651 F. Supp. 3d at 1358, 1361.  The Court remanded for Commerce to reconsider its inclusion of Malaysian surrogate values for both oak and non-oak log inputs without providing a reasonable explanation for departing from the established practice of using one surrogate country or supporting its determination with substantial evidence.  Id. at __, 651 F. Supp. 3d at 1357–59.  The Court also directed Commerce to reconsider or further explain its adjustment of plywood surrogate values because Commerce cited evidence that was not on the record.  Id. at __, 651 F. Supp. 3d at 1361.

On remand, Commerce continued to select Brazil as the primary surrogate country.  Remand Redetermination at 5–6.  Commerce also determined that it was appropriate to value Senmao's non-oak log inputs using Brazilian data and its oak log inputs using Malaysian data.  Id. at 15.  Commerce maintained that its initial determination to adjust the plywood surrogate values by removing erroneous data was reasonable.  Id. at 15−16.  Commerce stated that it complied with the Court's Order in Senmao I by attaching Exhibit 9 of AMMWF's Surrogate Value

Comments, which Commerce had previously cited to and relied on, but did not include on the record before the Court. Id. at 15. Commerce revised the antidumping duty rate and assigned a 34.68% dumping margin to Senmao. Id. at 17.

Upon review of Commerce's remand redetermination, the Court held that similar defects remained in Commerce's analysis supporting its selection of Brazil as the primary surrogate country, its selection of Brazilian surrogate values for non-oak log inputs and Malaysian surrogate values for oak log inputs, and its adjustment of surrogate values for plywood. Senmao II, 48 CIT at __, 698 F. Supp. 3d at 1283–87. First, the Court held that Commerce failed, again, to cite any specific evidentiary documents on the record in support of its determination that Brazil was the appropriate primary surrogate country. Id. at __, 698 F. Supp. 3d at 1283–84. Instead, Commerce cited to its own agency filings, such as its Preliminary Determination Memorandum, which is not evidence. Id. at __, 698 F. Supp. 3d at 1283. The Court remanded this issue for further reconsideration. Id. at __, 698 F. Supp. 3d at 1284.

Next, because the Court remanded Commerce's determination to select Brazil as the primary surrogate country due to Commerce's failure to cite substantial evidence, it refrained from opining on whether Commerce's

determination to use Malaysia as a secondary surrogate country to value oak log inputs was supported by substantial evidence. Id. at __, 698 F. Supp. 3d at 1285.

Lastly, the Court held that Commerce failed to provide a reasonable explanation for its adjustment of the surrogate value for plywood. Id. at __, 698 F. Supp. 3d at 1286. The Court reviewed the newly provided exhibits that Commerce previously relied on but were not on the record. Id. at __, 698 F. Supp. 3d at 1285–86. The Court found that Commerce did not identify with specificity the information within these exhibits that supported its conclusion that it was illogical for the Spanish $m^3$ and kg values to be expressed in the same quantity. Id. at __, 698 F. Supp. 3d at 1286. The Court also noted that Commerce removed the erroneous data without providing the Parties an opportunity to submit corrected data. Id. at __, 698 F. Supp. 3d at 1286–87. The Court suggested that Commerce consider providing the Parties with an opportunity to submit corrected information for a more accurate dumping margin calculation. Id. at __, 698 F. Supp. 3d at 1287. The Court remanded this issue for further reconsideration. Id.

Now before the Court is Commerce's Second Remand Redetermination. In its Second Remand Redetermination, Commerce maintained that Brazil was the appropriate primary surrogate country and offered no changes to its determination on this issue. Second Remand Redetermination at 5–8. Commerce asserted that it "provided the Court with a more detailed discussion of evidence relating to

Commerce's criteria that led Commerce to the conclusion that Brazil and Malaysia fulfilled the surrogate country criteria and to select Brazil as the primary surrogate country." Id. at 5.

In regard to its adjustment of the surrogate value for plywood, Commerce reiterated "that removing this erroneous [Spanish data], which is limited to a single line for a single month and does not affect data from any country except Spain, results in a more reliable and accurate dataset." Id. at 9. Commerce acknowledged that it did not act upon this Court's suggestion to use corrected data. Id. at 24.

Senmao filed Plaintiff's Comments in Opposition to Remand Redetermination. Pl.'s Cmts. Opp'n Remand Redetermination ("Pl.'s Cmts."), ECF No. 68. Plaintiff-Intervenor Lumber Liquidators Services, Inc. ("Plaintiff-Intervenor" or "Lumber Liquidators") filed Lumber Liquidators' Comments in Opposition to the Remand Redetermination. Pl.-Interv.'s Cmts. Opp'n Remand Redetermination ("Pl.-Interv.'s Cmts."), ECF No. 69. Defendant United States ("Defendant" or "Government") filed Defendant's Response to Comments on Remand Results. Def.'s Resp. Cmts. Remand Results ("Def.'s Resp."), ECF No. 70.

**JURISDICTION AND STANDARD OF REVIEW**

The U.S. Court of International Trade has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to

review actions contesting the final results in an administrative review of an antidumping duty order.  The Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  The Court also reviews determinations made on remand for compliance with the Court's remand order.  Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT 727, 730, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

### I.      Legal Framework

Antidumping duties are calculated as the difference between the normal value of subject merchandise and the export price or the constructed export price of the subject merchandise.  19 U.S.C. § 1673.  To determine the normal value of the subject merchandise in a nonmarket economy, Commerce must calculate surrogate values using "the best available information regarding the values of such factors in a [comparable] market economy."  Id. § 1677b(c).  In doing so, Commerce relies on one or more market economy countries that are (1) "at a level of economic development comparable to that of the nonmarket economy country," and (2) "significant producers of comparable merchandise."  Id. § 1677b(c)(4).  Commerce's task is to "attempt to construct a hypothetical market value" of the subject merchandise in the nonmarket economy.  Nation Ford Chem. Co. v. United

States, 166 F.3d 1373, 1375 (Fed. Cir. 1999). When Commerce determines that there is more than one country at the same level of economic development as the nonmarket economy country and is a significant producer of comparable merchandise, Commerce will consider the quality and availability of the surrogate value data. Fujian Lianfu Forestry Co. v. United States, 33 CIT 1056, 1075, 638 F. Supp. 2d 1325, 1347 (2009).

Commerce's regulatory preference is to value all factors of production with surrogate values from a single surrogate country. 19 C.F.R. § 351.408(c)(2); see e.g., Jiaxing Brother Fastener Co. v. United States, 822 F.3d 1289, 1302 (Fed. Cir. 2016). Commerce may use a second surrogate country if data from the primary surrogate country are unavailable or unreliable. Import Admin. Policy Bull. No. 04.1: Non-Market Economy Surrogate Country Selection Process ("Policy Bull. No. 04.1") (Dep't of Commerce Mar. 1, 2004). Commerce may depart from its single country preference if the data from a single surrogate country are "demonstrably aberrational as compared to certain benchmark prices, and alternative data sources could be better corroborated." Peer Bearing Co.-Changshan v. United States, 35 CIT 103, 119, 752 F. Supp. 2d 1353, 1369–72 (2011).

In evaluating surrogate value data, Commerce considers several factors, including whether the surrogate values are publicly available, contemporaneous

with the period of review, representative of a broad market average, tax and duty-exclusive, and specific to the inputs being valued.  Policy Bull. No. 04.1; Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378, 1386 (Fed. Cir. 2014) (citing the same factors).

Commerce is required by statute to value a respondent's factors of production using the "best available information."  19 U.S.C. § 1677b(c)(1)(B).  Commerce has a duty "to determine dumping margins as accurately as possible."  NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995) (internal quotation marks and citation omitted).  The reviewing court must consider "the record as a whole, including that which 'fairly detracts from its weight.'"  Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

When making its determinations, Commerce abuses its discretion if its "decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors."  Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005).  To be in accordance with law, Commerce's actions must be "reasonable under the terms of the relevant statute."  Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States, 24 CIT 485, 488, 102 F. Supp. 2d 486, 489 (2000).  Substantial evidence is "more than a mere scintilla" and has been defined as "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The record supporting Commerce's decision must support a "rational connection between the facts found and the choice made." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962).

## II.     Selection of Brazil as the Primary Surrogate Country

The Court observes that the arguments regarding the selection of Brazil as the primary surrogate country are essentially a dispute as to whether Commerce used the "best available information" pursuant to 19 U.S.C. § 1677b(c).

In its Second Remand Redetermination, Commerce stated that:

> both Brazil and Malaysia are suitable primary surrogate countries because they fulfill the above-mentioned criteria and the record contains usable data for valuing the vast majority of Senmao's FOPs. However, we are continuing to select Brazil as the primary surrogate country based on the quality of data because the Brazilian financial statement on the record is preferable to the Malaysian financial statement for the purpose of the financial ratios used in the normal value calculation.

Second Remand Redetermination at 7–8. Commerce explained that the Brazilian financial statements were for more comparable products of laminate flooring and were contemporaneous with the period of review. Id. at 7. Commerce also stated that it determined that:

> the Brazilian SV for oak logs [were] unavailable, [and] the record only contains usable data from Malaysia for one species of log that make up Senmao's two oak log inputs: Malaysian HS 4403.91.1000: "Oak Wood In The Rough." The Brazilian HS basket category is left to value

the remaining five species of logs used to produce the veneers in Senmao's production process.

Id. at 15. Further, Commerce stated that, "[i]n addition to the lack of a specific fiberboard SV, Malaysia suffers an additional and important deficiency as a potential surrogate country in that, as noted above, it does not have contemporaneous surrogate financial statements from which to derive surrogate financial ratios." Id. at 18. Commerce summarized that:

> we continue to find the data to be the best available information because it comes from the primary surrogate country and fulfills Commerce's criteria. In contrast, [the] Malaysian financial statement is less specific to high density fiberboard that Senmao uses and lacks a contemporaneous financial statement. Therefore, based on the totality of the SV data and the weighing of these factors, we find that the quality of data and financial statements in Brazil favors selecting Brazil over Malaysia as the primary surrogate country.

Id. at 19.

Plaintiff and Plaintiff-Intervenor contend that Commerce's determination to select Brazil as the primary surrogate country, while also rejecting or adjusting Brazilian data for the primary inputs (valuing Plaintiff's log inputs using Malaysian data and adjusting Brazilian plywood data) is not in accordance with law or supported by substantial evidence. Pl.'s Cmts. at 3–12; Pl.-Interv.'s Cmts. Plaintiff avers that Malaysia should have been selected as the single primary surrogate country because Commerce could have relied on Malaysian data without substitution or manipulation. Pl.'s Cmts. at 4–5. Plaintiff highlights that

Commerce does not explain why the Malaysian financial statements are unusable in this case. Id. at 5. Senmao argues that Commerce's Second Remand Redetermination is not supported by substantial evidence or in accordance with law. Id. at 3–12.

Commerce must determine what set of data represents the "best available information." Home Meridian Int'l, Inc. v. United States, 772 F.3d 1289, 1294 (Fed. Cir. 2014). The Home Meridian court explained that "[t]he data on which Commerce relies to value inputs must be the 'best available information,' but there is no requirement that the data be perfect." Id. at 1296.

In support of its selection of Brazil as the primary surrogate country, Commerce explained that the Brazilian financial statements on the record were preferable to the Malaysian financial statement for the purpose of the financial ratios used in the normal value calculation because the Brazilian financial statements were for more comparable products of laminate flooring and were contemporaneous with the period of review. Second Remand Redetermination at 7.

In evaluating surrogate value data, Commerce considers several factors, including whether the surrogate values are publicly available, contemporaneous with the period of review, representative of a broad market average, tax and duty-exclusive, and specific to the inputs being valued. Policy Bull. No. 04.1. Here,

Commerce apparently gave considerable weight to contemporaneity, which is a factor that Commerce may consider in its assessment of "best available information."  See Home Meridian, 772 F.3d at 1294.  Commerce also gave weight to the factor of "specific to the inputs being valued."  Second Remand Redetermination at 6–7.  Because Commerce properly considered that the Brazilian financial statements were contemporaneous with the period of review and specific to the inputs being valued according to regulatory policy reflected in Policy Bulletin No. 04.1, the Court concludes that Commerce's selection of the Brazilian financial statements as the "best available information" for surrogate financial statements was in accordance with law and supported by substantial evidence.

19 C.F.R. § 351.408(c) provides that, "[f]or purposes of valuing the factors of production, . . . [Commerce] normally will value all factors in a single surrogate country."  19 C.F.R. § 351.408(c)(2).  Commerce explained that when promulgating its regulations, the preference for a single country is meant to prevent parties from "margin shopping," and Commerce may depart from its regulatory preference for a single surrogate country when Commerce determines that the "accuracy of available information regarding prices for particular factors in the surrogate country is 'highly questionable,'" in which case Commerce may reject the questionable values and use data from a second country.  Antidumping Duties;

Countervailing Duties, 61 Fed. Reg. 7308, 7345 (Dep't of Commerce Feb. 27, 1996).  Commerce may use a secondary surrogate country if financial data are "inadequate or unavailable."  Policy Bull. 04.1 ("After all, a country that perfectly meets the requirements of economic comparability and significant producer is not of much use as a primary surrogate if crucial factor price data from that country are inadequate or unavailable.").

With respect to Commerce's determination to use both Malaysian and Brazilian surrogate value data, Plaintiff challenges Commerce's use of data from two different countries, particularly in light of Commerce's established preference for a single surrogate country.  Pl.'s Cmts. at 6–7.  Commerce determined on second remand that the Brazilian surrogate value for oak logs were unavailable, and the only usable data on the record from Malaysia are "for one species of log that make up Senmao's two oak log inputs: Malaysian HS 4403.91.1000: 'Oak Wood In The Rough.'  The Brazilian HS basket category is left to value the remaining five species of logs used to produce the veneers in Senmao's production process."  Second Remand Redetermination at 15.  Further, Commerce stated that, "[i]n addition to the lack of a specific fiberboard SV, Malaysia suffers an additional and important deficiency as a potential surrogate country in that, as noted above, it does not have contemporaneous surrogate financial statements from

which to derive surrogate financial ratios." Id. at 18. Commerce explained that it

considered the Brazilian surrogate value data to be:

> the best available information because it comes from the primary
> surrogate country and fulfills Commerce's criteria. In contrast,
> Malaysian financial statement is less specific to high density fiberboard
> that Senmao uses and lacks a contemporaneous financial statement.
> Therefore, based on the totality of the SV data and the weighing of these
> factors, we find that the quality of data and financial statements in
> Brazil favors selecting Brazil over Malaysia as the primary surrogate
> country.

Id. at 19. Commerce stated that both the Brazilian and Malaysian SV data were

publicly available, contemporaneous with the period of review, were representative

of broad market averages, and were tax- and duty-exclusive. Id. at 6.

Commerce explained that it "used Malaysian SV data to value Senmao's oak

log inputs" because "the best available information for valuing" factors of

production are "product-specific, representative of a broad-market average,

publicly available, contemporaneous with the [period of review], and exclusive of

taxes and duties." Id. at 12. On second remand, Commerce "reconsidered how it

valued Senmao's log inputs and ultimately found that the Brazilian SV for oak logs

was unavailable based on Brazil's historical import data." Id. at 13–14 (citing

AMMWF Rebuttal SV Cmts. at Ex. 1 (historical Brazilian import data), PR 186).

Commerce explained that it relied on the descriptions of Senmao's inputs as

"European oak" and "red oak" contained in the cited documents and determined

that the best available information to value these two inputs was the Malaysian

data, which was "most specific to Senmao's oak wood inputs." Id. at 14 (citing

AMMWF SV Cmts. at Ex. 2; Senmao Sec. C & D Questionnaire Resp. at Ex. D-5,

PR 145).

Commerce noted that the Malaysian data for "European oak" and "red oak"

were most specific to Senmao's oak wood inputs, but the Brazilian data for the

remaining five wood inputs (non-oak logs) were not "unavailable, inadequate or

unreliable," and thus Commerce relied on record evidence of the Brazilian

subheading HS 4403.99: "Wood In The Rough" to value the remaining log types.

Id. at 14–15. Commerce determined that the Brazilian SV data for oak logs was

unavailable, and thus "the record only contains usable data from Malaysia for one

species of log that make up Senmao's two oak log inputs." Id. at 15. Additional

record evidence contained Brazilian SV data pertaining to fiberboard, a "major

input that is used as a core material in the production of the subject merchandise."

Id. at 17 (citing Senmao Sec. C & D Questionnaire Resp. at Sec. C at 10, Sec. D at

5; Senmao SV Cmts. at Exs. 1, 2, PR 176–77; AMMWF's SV Cmts. at Exs. 1, 2).

Commerce summarized that, "based on the totality of the SV data and the

weighing of these factors, we find that the quality of data and financial statements

in Brazil favors selecting Brazil over Malaysia as the primary surrogate country."

Id. at 19.

This Court remanded because Commerce previously failed to provide sufficient explanations for its determinations and failed to cite any specific documents on the record in support of its determination that Brazil was the appropriate primary surrogate country.  Senmao II, 48 CIT at __, 698 F. Supp. 3d at 1283–84.  Commerce has cured these problems in its Second Remand Redetermination.  Because Commerce considered the proper factors as required by regulatory policy reflected in Policy Bulletin No. 04.1, articulated its analysis under the statutory obligation to consider the "best available information," and cited record evidence in support of its "best available information" determinations, the Court concludes that Commerce's selection of financial statements and surrogate value inputs from Brazil as the primary surrogate country, while using Malaysian data for two oak inputs, was in accordance with law and supported by substantial evidence.  The Court sustains Commerce's determinations on the issue of selection of Brazil as the primary surrogate country and the use of two surrogate countries for surrogate value inputs.

## III.    Adjustment of Surrogate Values for Plywood

This Court remanded the adjustment of surrogate values for plywood because Commerce failed to provide an adequate explanation for the adjustment, and the Court suggested that Commerce provide the parties with an opportunity to correct any erroneous data.  See id. at __, 698 F. Supp. 3d at 1286–87.

Commerce provided additional explanation on second remand that the erroneous surrogate value data was contained in the Global Trade Atlas ("GTA"), which was publicly available, contemporaneous with the period of review, and "[s]pecifically, the GTA SV data represent broad market averages because they encompass the average prices for inputs imported into Brazil and Malaysia during the [period of review]. Further, GTA data have previously been found to be tax and duty-exclusive, and no parties have argued otherwise." Second Remand Redetermination at 6. The Global Trade Atlas is typically viewed as a reputable and reliable source of evidence in surrogate value cases, but Commerce became aware that "this particular component of the Brazilian SV is clearly incorrect." IDM at 9. Commerce reiterated in the Second Remand Redetermination that one "erroneous line item in the Brazilian import data, which reported the same quantity figure for kgs and m³ represented imports from Spain for a single [period of review] month – January 2020. We agree with Senmao that no party has argued that this data is not erroneous." Second Remand Redetermination at 23. In other words, it is undisputed by the Parties that the GTA surrogate value data for imports into Brazil for the period of review is incorrect.

Commerce explained on second remand that:

In the Final Results, Commerce adjusted the composite Brazilian SV for plywood by removing the Spanish import data for January 2020 from the average unit value because this single line of data (Spanish data) was erroneous. The January 2020 import data used for the

purpose of calculating the SV for plywood reported quantities for imports from Spain under HS subheading 4412.33 in both cubic meters (m³) and kilograms (kg). However, the quantity of plywood expressed in m³ was the same as the quantity expressed in kg, which is in error because the former measures volume and the latter measures weight.

\* \* \*

Commerce made its determination that the Spanish import plywood values were erroneous based on the Petitioner SV Comments at Exhibit 9, which contains information on the density of wood species expressed in m³ and kg. . . . The equation for density for the Spanish import data, as indicated in the right-side column of Exhibit 9A, is kg/ m³. If both m³ and kg are equal values, it would result in a density of one, which is erroneous considering the values in the log density table spanning the entirety of Exhibit 9A all range in the hundreds. Additionally, in Exhibit 9B, the chart at the bottom of page 36 titled Weight and Volume includes comparisons of kg/ m³ and m³/ton for various FOPs, one of which is plywood with a density value of 650, demonstrating that m³ and kg are discrete units that cannot be of equal value especially when calculating plywood density. . . . This flaw only affects a single line [of] Spanish data in the entire dataset, which calls into question the reliability of the value in this specific line of data. We find that removing this erroneous value, which is limited to a single line for a single month and does not affect data from any country except Spain, results in a more reliable and accurate dataset.

Id. at 8–9 (citing AMMWF's SV Cmts. at Exs. 9, 9A, 9B). Commerce stated that

the number one should have instead been in the hundreds if it were mathematically

and factually correct. Id. at 9. Commerce contended that using the erroneous

dataset of one would have resulted in a more inaccurate result. Id. Thus,

Commerce determined that the "best available information" would result from

deleting the erroneous data rather than using the clearly wrong data. Id.

Defendant argues that removing the erroneous datapoint, "which only represents a

single month of imports from a single country, results in a more reliable and accurate dataset." Def.'s Resp. at 18.

The erroneous January 2020 Spanish import data in the Global Trade Atlas was likely the result of clerical error. See IDM at 10. The Court observes that because the Global Trade Atlas is a third-party publication that is a publicly available source of information, there would be no opportunity for the Parties to actually fix the January 2020 Spanish import data in the Global Trade Atlas publication. Because the error exists in a third-party publication, Commerce determined that it had a binary choice to either use the erroneous data or delete the erroneous number from its calculations.

Commerce must determine what set of data represents the "best available information." Home Meridian Int'l, 772 F.3d at 1294; 19 U.S.C. § 1677b(c)(1). The Home Meridian court explained that "[t]he data on which Commerce relies to value inputs must be the 'best available information,' but there is no requirement that the data be perfect." Home Meridian, 772 F.3d at 1296. When making its determinations, Commerce abuses its discretion if its "decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." Star Fruits S.N.C., 393 F.3d at 1281.

Here, the Global Trade Atlas data for imports of plywood to Brazil was not only imperfect, but it was also objectively incorrect. Using the incorrect data for imports from Spain to Brazil for January 2020 would result in using the number one, rather than a number that should be in the hundreds, which would artificially lower the surrogate value of Brazilian plywood. But simply removing the January 2020 import data led to a distortion that increased the Brazilian plywood surrogate value by 453%. Senmao II, 48 CIT at __, 698 F. Supp. 3d at 1285; Pl.'s Cmts. at 9–11.

This case presents an unfortunate choice of Commerce's own making. Both using the data and deleting the data would produce aberrational, inaccurate results. The Government contends that "accuracy," as defined by the U.S. Court of Appeals for the Federal Circuit ("CAFC") in the context of determinations from Commerce, is a result that is "correct as a mathematical and factual matter, thus supported by substantial evidence." Def.'s Resp. at 18 (quoting Nan Ya Plastics Corp. v. United States, 810 F.3d 1333, 1344 (Fed. Cir. 2016)). Under the CAFC's definition of accuracy, neither result—import data with or without the erroneous January 2020 entry—would be accurate or supported by substantial evidence. See Nan Ya Plastics Corp., 810 F.3d at 1344.

The Court disagrees with Commerce's contention that "removal of the erroneous plywood line item results in a more accurate dataset," Second Remand

Redetermination at 24, and the Court cannot sustain Commerce's deletion of the

Spanish import data that produced an objectively incorrect and 453% distorted

value as reasonably the "best available information." Commerce abused its

discretion when it deleted the data and created a 453% distortion under the guise of

"best available information." The deletion of the Spanish import data was

unreasonable, an abuse of discretion, not in accordance with law, and not

supported by substantial evidence. Commerce has now made this adjustment three

times. The Court orders that Commerce may not make this unreasonable and

unlawful adjustment a fourth time on remand.

Commerce asserted in the Second Remand Redetermination that "the Court

[in Senmao II] did not order Commerce to reopen the record but included it as an

option to consider" and noted that "it is not Commerce's normal practice to reopen

the record on remand." Id. Commerce declined to reopen the record on second

remand.

Because of the unusual situation in this case, the Court now orders

Commerce to reopen the record on third remand to obtain accurate data regarding

the correct surrogate values for imported plywood. While courts are generally

reluctant to order an agency to reopen its record and admit new documents, there

are two exceptions to this rule. Essar Steel Ltd. v. United States, 678 F.3d 1268,

1277–78 (Fed. Cir. 2012). One exception is for cases, just as this one, "when the

underlying agency decision was based on 'inaccurate data' that the 'agency generating those data indicates are incorrect.'" Id. (quoting Borlem S.A.-Empreedimentos Industriais v. United States, 913 F.2d 933, 937 (Fed. Cir. 1990)).

Commerce admits that the Spanish import data for January 2020 is inaccurate. Second Remand Redetermination at 23. Removing this line item is equally inaccurate. The Court will not uphold as reasonable an agency's "determination that is based on data that the agency generating those data indicates are incorrect." Borlem S.A.-Empreedimentos Industriais, 913 F.2d at 937. "Congress' desire for speedy determinations on dumping matters should not be interpreted as authorizing proceedings that are based on inaccurate data." Id. The Court will "not require, nor would it make sense to require, reliance on data which might lead to an erroneous result." Id.

If corrected January 2020 data is unavailable as the Parties have indicated, then the Court suggests that Commerce might consider substituting Spanish import data of plywood to Brazil from January 2019 or January 2021 from the Global Trade Atlas (which would require an arguably more reasonable adjustment), or Commerce might consider using Global Trade Atlas data for surrogate values of imported plywood to Malaysia from the period of review instead (which presumably would not contain any clerical errors and would not need to be adjusted), or another reasonable option, with the goal of approximating a

calculation that is more objectively accurate, less distortive, and closer to the "best available information."  In any event, Commerce's deletion of the January 2020 dataset is unreasonable, grossly distortive by 453%, not in accordance with law, and clearly not the "best available information."

Because Commerce relied on objectively flawed evidence in its surrogate value calculation for plywood, the Court holds that Commerce's determination on this issue was not in accordance with law and not supported by substantial evidence.

**CONCLUSION**

For the foregoing reasons, the Court sustains Commerce's determination to select Brazil as the primary surrogate country and remands Commerce's adjustment of the surrogate value for plywood with an order to reopen the record consistent with this Opinion.  Accordingly, it is hereby

**ORDERED** that Commerce's Final Results of Redetermination Pursuant to Second Remand Order, ECF No. 66-1, are remanded to Commerce for reconsideration consistent with this Opinion; and it is further

**ORDERED** that this case shall proceed according to the following schedule:

(1) Commerce shall file the remand determination on or before April 18, 2025;

(2) Commerce shall file the administrative record on or before May 2, 2025;

(3) Comments in opposition to the remand determination shall be filed on or before June 2, 2025;

(4) Comments in support of the remand determination shall be filed on or before July 2, 2025; and

(5) The joint appendix shall be filed on or before July 9, 2025.


                                           /s/ Jennifer Choe-Groves
                                        Jennifer Choe-Groves, Judge

Dated:     February 18, 2025
               New York, New York